■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ELEVTERIO CORTIJO, Also Known as ELUTERIO CORTIJO, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR SANIEL, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS MATURINE, Appellant. [675 NYS2d 50] —Judgments, Supreme Court, New York County (Bruce Allen, J.), rendered against defendant Cortijo on April 24, 1995 and against defendants Saniel and Maturine on May 31, 1995, convicting each defendant, after a jury trial, of criminal sale of a controlled substance in the third degree, and sentencing defendants Cortijo and Maturine, as second felony offenders, to terms of 4½ to 9 years, and sentencing defendant Saniel to a term of 1 to 3 years, unanimously affirmed.

The court properly ordered closure of the courtroom to all but defendants' families following the undercover officer's testimony at the Hinton hearing that he made drug purchases in the same area where defendants were arrested, both before and after their arrests, remained active in the same area, had open cases there, had been threatened by people in other cases where he had testified, feared for his and his family's safety as well as for the integrity of future investigations and had made efforts to conceal his identity when coming to court (People v Ayala, 90 NY2d 490, cert denied 522 US 1002; People v Eraso, 248 AD2d 243). Further, since defense counsel never suggested any alternatives to closure, the court was not required to do so (People v Ayala, supra).

The court properly admitted into evidence prerecorded buy money recovered from two of the defendants after their arrest since the People provided reasonable assurances of the money's identity and unchanged condition (*People v Julian*, 41 NY2d 340). Defendants' speculative assertion that the money was commingled with buy money recovered from other suspects is unsupported by the record (*see, People v Canosa*, 194 AD2d 392, *lv denied* 82 NY2d 715). Moreover, reasonable assurances of identity existed since the record indicates continual police control over the evidence in question (*People v Murray*, 191 AD2d 397, *lv denied* 82 NY2d 723; *see also, People v Moore*, 213 AD2d 352, *lv denied* 86 NY2d 738).

Defendants' request for a missing witness charge with respect to a sergeant, who had custody of the buy money at the precinct and removed some of it before it was vouchered, was untimely (*People v Alamo*, 202 AD2d 349, *lv denied* 84 NY2d 822). In any event, since there was no indication that anything untoward happened to the buy money while it was in the sergeant's possession, there was no material issue about the chain of custody and the court properly denied defendants' request for a missing witness charge.

Defendants' suppression motions were properly denied. The arresting officer's testimony, taken as a whole, provided sufficient information as to the content of the radio transmission and established that the arrest took place within minutes of and at the location of the sale, so as to allow the hearing court to make an independent determination that the arrest was supported by probable cause (*People v Martinez*, 245 AD2d 185; *People v Ward*, 182 AD2d 573, *lv denied* 81 NY2d 849; *see also, People v Brown*, 238 AD2d 204, *lv denied* 90 NY2d 1010; CPL 710.60 [4]).

The evidence was legally sufficient to establish beyond a reasonable doubt that defendant Maturine, who asked for, and received, a portion of the proceeds of the sale from his codefendants, then asked the seller if he was "out" and who was found in possession of some of the prerecorded buy money, acted with his codefendants in the furtherance of the sale (*see, People v Hill*, 198 AD2d 100; *People v Williams*, 172 AD2d 448, *affd* 79 NY2d 803). Moreover, the verdict was not against the weight of the evidence. Concur—Milonas, J. P., Rosenberger, Nardelli, Wallach and Rubin, JJ.